# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

CLEVE FOSTER,          §
    *Petitioner*          §
              §
    v.          §
              §          Civil Action No. 4:07-CV-210-Y
RICK THALER, Director,          §          (death-penalty case)
T.D.C.J., C.I.D.,          §
*Respondent.*          §

## MOTION FOR RELIEF FROM JUDGMENT
## PURSUANT TO Fed.R.Civ.Proc. 60(b) and BRIEF IN SUPPORT

F. Clinton Broden
Texas Bar No. 24001495
Broden & Mickelsen
2600 State Street
Dallas, TX 75204

Maurie Levin
Texas Bar No. 00789452
Capital Punishment Clinic
U.T. School of Law
727 East Dean Keeton
Austin, TX 78705

***Counsel for Cleve Foster***

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CLEVE FOSTER,              §
        *Petitioner*       §
                           §
    v.                     §
                           §    Civil Action No. 4:07-CV-210-Y
RICK THALER, Director,      §    (death-penalty case)
T.D.C.J., C.I.D.,          §
*Respondent.*              §

MOTION FOR RELIEF FROM JUDGMENT
PURSUANT TO Fed.R.Civ.Proc. 60(b) and BRIEF IN SUPPORT

## INTRODUCTION

Mr. Foster has consistently asserted his innocence.  The state's case against him – based on the law of parties, and *never* based on an argument that Mr. Foster was the person who killed Nyaneur "Mary" Pal – was circumstantial and threadbare.  His co-defendant, Sheldon Ward, who the State prosecuted as the actual shooter, has consistently stated that he committed the murder by himself.  Indeed, Ward has confessed to the murder of Ms. Pal four times: twice before his arrest, once in a written statement he gave upon arrest, and once while on death row.  There are inconsistencies between Ward's statements, but they are unremittingly consistent in making clear that Ward alone murdered Ms. Pal and that Mr. Foster had nothing to do with it.  Indeed, in Ward's capital trial, the state argued: *"There's no evidence that Cleve Foster had anything to do with [Mary Pal's murder] other than he was in the truck when they left."*  *State v. Sheldon Ward*, No. 0835934A (CDC #1 of Tarrant County, Texas) (RR 22:45).

However, Mr. Foster's ability to raise the full force of his claim of innocence and related claims of ineffective trial counsel was thwarted by the appointment of inadequate state habeas counsel, and the ripple effect that shut down all subsequent doors he attempted to open in the

federal courts. When counsel asked this Court for funding to hire an investigator and blood spatter expert, this Court granted minimal funding on the former, and denied the latter[1]– in part because of the limited record before the Court (undeveloped by state habeas counsel) and questions of cognizeability and default. In response to each of Petitioner's requests for assistance on the very claims at issue here, Respondent argued vociferously that the claims were unexhausted and thus defaulted (because of the inadequacies of state habeas counsel). When Mr. Foster ultimately and nonetheless raised these key claims in the petition filed with this Court, the state argued that they were defaulted. While Mr. Foster's counsel argued that state habeas counsel's inadequacies should be considered cause for any default, the state cited to then existing Supreme Court and Fifth Circuit precedent rejecting such arguments, and this Court declined to address the arguments centered on state habeas counsel's inadequacies.[2]

Pivotally, this litigation was conducted during a span of time when the United States Supreme Court was considering, for the first time in twenty years, the possibility of a constitutional right to effective state habeas counsel, and / or a remedy for the instances where appointed habeas counsel were not acting as the client's agent. Indeed, three times in 2011 Mr. Foster was scheduled for execution, and three times he received a stay from the United States Supreme Court. In each instance, he was presenting to the Court – in different procedural vehicles and at different times during the Court's consideration of the issue – the fundamental question of the inadequacies of appointed state habeas counsel, and the way those inadequacies hamstrung his

---

[1] See Foster v. Quarterman, No. 4:07-vc-210, docket entries 15, 16, 17, 18, 21, 22, 24, 25, 26, 28.

[2] This Court did address the merits of Mr. Foster's innocence and trial ineffectiveness, but applied an erroneous standard for the prejudice determination under Strickland. Moreover, the record on these issues was not fully developed – because of state counsel's ineffectiveness and the preclusive effect of those deficiencies once Mr. Foster got to federal court. Lastly, it was not until the eve of his first scheduled execution that Mr. Foster was able to obtain the pro bono services of a blood spatter expert – who averred that Ms. Pal was indeed murdered where she was found – thus undermining the central tenet of the State's argument that Mr. Foster was eligible for a capital murder conviction.

ability to raise the question of his innocence, and trial counsel's inadequacies with respect to their failure to litigate same.

On March 20, 2012, the Supreme Court decided *Martinez v. Ryan*, holding that

Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 132 S.Ct. 1309, 1320 (2012).  Mr. Foster's petition – which had been stayed in conjunction with a petition for a writ of certiorari to the Texas Court of Criminal Appeals ("CCA") raising the question of a right to effective state habeas counsel but not, at that point, as a question of cause for default – was denied.   However, Martinez' holding addresses the very issue Mr. Foster raised in his previous proceedings before this court – an issue that he has been raising, consistently, since he was appointed competent counsel to represent him in federal court.

Thus, Mr. Foster is before this Court respectfully submitting that the extraordinary circumstances of *this* case, where he has been not only faultless in the delay, but diligently pursuing his rights throughout, warrants relief, under FED. R. CIV. PROC. 60(b)(6), from the judgment entered by this Court on Dec. 2, 2008.  He respectfully requests that this Court vacate the judgment, and allow him the opportunity to present, with full briefing on the merits and the question of default, the claim of ineffective assistance of counsel for failure to investigate and litigate his claim of innocence.

## STATEMENT OF THE CASE

### I.    Prior Proceedings

Cleve Foster was convicted and sentenced to death for the murder of Nyanuer "Mary" Pal in the C.D.C. No. 1 of Tarrant County on February 12, 2004.  The conviction and sentence were affirmed on direct appeal.  *Foster v. State*, No. 74,901 (Tex. Crim. App. Apr. 12, 2006).  The

Supreme Court denied *certiorari* on January 08, 2007. *Foster v. Texas*, 549 U.S. 1118 (2007).

Counsel was appointed to represent Mr. Foster for purposes of his state habeas proceedings. The trial court adopted verbatim the State's proposed findings of fact and conclusions of law, and the Texas CCA adopted the trial court's recommendation in a two paragraph (?) order. *Ex parte Foster*, No. 65,99-01 (Tex. Crim. App. Mar. 21, 2007).

Mr. Foster, represented by newly appointed counsel (undersigned F. Clinton Broden), challenged his conviction in federal court pursuant to 28 U.S.C. § 2254. The number and scope of issues raised were dictated by the extraordinarily limited nature of the state habeas petition and presentation. Nonetheless, Mr. Foster raised a claim of innocence, and asserted that trial counsel were ineffective for failing to fully litigate the question of his innocence. These claims were unexhausted. Prior to filing his petition, Mr. Foster requested funding from this Court to permit the hiring of an investigator and a blood spatter expert. Both requests centered on efforts to investigate Mr. Foster's claim of innocence and the concomitant claim of trial counsel's ineffectiveness. In opposing those requests, the State consistently argued that funding was not warranted because the claims on which counsel sought assistance were unexhausted and thus defaulted. The State asserted the same argument in Response to Mr. Foster's Petition. Mr. Foster devoted three pages of his Reply explaining why the ineffectiveness of state habeas counsel constituted cause for the default (while recognizing Supreme Court and Fifth Circuit case law to the contrary). *See* Docket Entry 40 at 3-6.[3]

While this Court did not address Mr. Foster's argument that "ineffective assistance of state habeas counsel" established cause for non-exhaustion, it nevertheless noted that it was ruling on all of Mr. Foster's claims on their "merits." *See Foster v. Quarterman*, 2008 WL 5083078, *9 (N. D.

---

[3] Failure to exhaust in relation to a Petition for Writ of Habeas Corpus is an affirmative defense. *Day v. McDonough*, 547 U.S. 198, 208 (2006); *Diaz v. Quarterman*, 228 Fed. Appx. 417, 423 n.1 (5th Cir. 2007).

Tex., Dec. 2, 2009).[4]

Mr. Foster sought a Certificate of Appealability from the Fifth Circuit on many of the claims this Court had considered on the merits, including the claims of innocence and ineffective assistance of trial counsel for failing to litigate same. The State, in its response, again elected to argue that these claims, among others, were unexhausted. Mr. Foster's Reply asserted that "ineffective assistance of state habeas counsel" established cause for any default.

The Fifth Circuit declined to consider this argument. *See Foster v. Thaler*, 369 Fed. Appx. 598, 2010 WL 924885 (C.A.5 Tex.). It first mistakenly asserted that Mr. Foster had not "present[ed] the argument in the district court,"[5] and then found that the argument was waived because it was raised "for the first time in a reply brief." *Id* at *603, *5.[6] However, the Court also noted that the argument presented a question that at least one Justice considered to have been "left open" by Coleman v. Thompson, 501 U.S. 722 (1991). *See Id., citing Daniels v. United States*, 532 U.S. 374, 387 (2001) (Scalia, J., concurring).

Mr. Foster's Petition for Writ of Certiorari was denied. *Foster v. Texas*, 2010 WL 3698830 (Dec. 13, 2010). Mr. Foster was scheduled for execution on January 11, 2011.

It was not until December 17, 2010 that Mr. Foster was able to obtain the *pro bono*

---

[4] Mr. Foster respectfully submits that this Court's prior analysis of his claim of ineffective assistance of trial counsel for failing to adequately litigate issues pertaining to his innocence both applied the wrong prejudice standard under *Strickland* (asking if Mr. Foster would have been acquitted if Ward's letter had been introduced, rather than asking if there was a "reasonable probability" – a "probability *sufficient* to undermine confidence in the outcome" - the result would have been different but for counsel's ineffectiveness), and misapprehended vitally relevant facts. Moreover, this Court did not have before it the affidavit Mr. Foster was only able to obtain from a pro bono expert on the eve of his first scheduled execution.

[5] The Fifth Circuit recognized its error in its Order denying Mr. Foster's Motion for Rehearing. *See Foster v. Thaler*, 607 F.3d 391, 392 (5th Cir. 2010).

[6] As this Court addressed all of Mr. Foster's claims on the merits, his understanding was that he was not required to assume that the State would again raise its affirmative defense of non-exhaustion in the Fifth Circuit. See, e.g., *Reid v. Radcliffe*, 2008 WL 4853597 (E.D. Wisc., Nov. 3, 2008) ("[F]ailure to exhaust state remedies is an affirmative defense that a petitioner need not anticipate...."). *See also Jones v. Bock*, 549 U.S. 199, 212 (2007).

services of blood spatter expert Gary Rini.  Rini's affidavit was presented in conjunction with a subsequent state habeas application, which asserted a claim of ineffective assistance of counsel, and innocence (as integral to the ineffectiveness claim, and to support Foster's argument that consideration of his successive petition was warranted pursuant to Tex. Code Crim. Proc. Art. 11.071 §5), and outlined the deficiencies of appointed state habeas counsel that prevented these claims from being presented earlier.

However, Mr. Foster, as a successor applicant, now faced a higher hurdle to warrant merit consideration of his claims.  Thus, the CCA dismissed his subsequent Application.  *Ex parte Foster*, No. WR 65,799-02 (Tex. Crim. App. Dec. 30, 2010).  Judge Price, joined by Judge Holcomb, dissented, stating "[i]t is simply intolerable to refuse to entertain a claim from an arguably innocent applicant, raised in a subsequent writ application, simply because he was unlucky enough to draw initial writ counsel of questionable competence."  *Id.*, slip op. at 3 (Price, J., dissenting). Judge Price also noted that "I am inclined to agree with applicant, at least on the basis of his pleading, that his trial counsel provided ineffective assistance of counsel in this [failure to obtain the assistance of a blood spatter expert] regard."  *Id.*, slip op. at 1, fn. 1.

Mr. Foster filed a petition for a writ of certiorari off that denial, raising the question of whether there is a limited right to constitutionally effective state habeas counsel with respect to claims, such as ineffective assistance of trial counsel, that can only be raised for the first time in state habeas proceedings.  In conjunction with that filing, the Supreme Court stayed Mr. Foster's scheduled execution pending disposition of his petition.  *Foster v. Texas*, 131 S.Ct 991 (2011) (Scalia, J. and Alito, J., dissenting).  On January 18, the Court denied *certiorari* and lifted the stay. *Foster v. Texas*, 131 S.Ct. 1034 (2011).  On January 28, 2011, the trial court scheduled Mr. Foster for execution on April 5, 2011.

On March 21, 2011, the U.S. Supreme Court granted *certiorari* in *Maples v. Maples,* 2011

WL 940889 (U.S.) on the question of whether there was cause to excuse a procedural default where petitioner was blameless for the default, the State's own conduct contributed to the default, and petitioner's attorneys of record were no longer functioning as his agents at the time of any default. In light of that grant, on April 1, 2011, Mr. Foster filed with the Supreme Court an out of time Petition for Rehearing of Order of Denial of Certiorari, a Motion for Leave to File Out of Time, and a Motion for Stay of Execution.  On April 5, 2011, the Court granted the Motion for Leave to File, and again stayed Mr. Foster's scheduled execution.  *Foster v. Texas*, 131 S.Ct. 1848 (U.S.).

On May 31, 2011, the Court denied Mr. Foster's Petition for Out of Time Rehearing of Order of Denial of Certiorari, and lifted the stay of execution.  *Foster v. Texas*, 131 S.Ct. 2951 (2011).  Mr. Foster was then scheduled for execution on September 20, 2011.

On June 6, 2011, the Supreme Court granted *certiorari* in *Martinez v. Ryan*, 566 U.S. ___, No. 10-1001. *Martinez* presented the question whether a petitioner whose first opportunity to raise an ineffective assistance of trial counsel claim is in state post-conviction proceedings has a federal constitutional right to effective assistance of first state post-conviction counsel with respect to his ineffective-assistance-of-trial-counsel claim. *Martinez*, slip op. at 1.

On September 2, 2011, Mr. Foster filed a subsequent application in the CCA, raising claims of ineffective assistance of trial counsel for failure to present evidence of innocence, and ineffective assistance of state habeas counsel for failing to raise the trial ineffectiveness claim.  The CCA dismissed that application on September 12, 2011, with two judges dissenting.

Mr. Foster filed a petition for a writ of certiorari off that denial, and on September 20, 2011, the U.S. Supreme Court – for the third time in 9 months – stayed Mr. Foster's scheduled execution. *Foster v. Texas*, 132 S.Ct. 69 (2011).

On March 20 2012, the Supreme Court decided *Martinez v. Ryan*.  On March 26, 2012, the Supreme Court denied certiorari in Mr. Foster's case.  *Foster v. Texas*, 132 S.Ct. 1821 (2012).

## II.   Statement of Facts

As noted above, Mr. Foster was tried as an accomplice under Texas' law of parties.  At his capital trial, the state argued he was guilty on the theory that (1) Ms. Pal was not killed in the secluded area where her body was found; (2) Ward could not have moved her body by himself; and (3) Mr. Foster was the one who must have helped him.  This argument depended on the reluctant testimony of the state's medical examiner who was asked to speculate about the import of the blood spatter at the scene, and the testimony of a police investigator, who strayed far outside his area of expertise to surmise and speculate about the circumstances of Ms. Pal's death.  The state has consistently argued this point – relying upon this highly questionable testimony to do so - in opposing a directed verdict at trial, in closing arguments, and in its appellate and post-conviction briefs.

The state's "impossible for Ward to have acted alone" argument was not tested at trial because Cleve Foster's defense lawyers failed to employ even the most minimal evidentiary arguments to introduce into evidence one of Ward's particularly pivotal confessions, and because they blindly accepted the state's argument that Ms. Pal was not killed where her body was found. The most obvious way to test that theory was through the use of a blood spatter expert – yet neither Mr. Foster's trial nor state habeas counsel sought or retained such an expert to test the state's tenuous theory.

After unsuccessfully requesting funding for a blood spatter expert, federal habeas counsel eventually persuaded blood spatter expert Gary Rini to review this case *pro bono*. A second expert, Anita Zannin, eventually added her voice to Mr. Rini's.  *See* Appendices 2 and 3.  Both concluded that the state's arguments have no basis in the evidence, and that Ms. Pal was, in fact, killed where her body was found.  This conclusion completely undermines the state's theory that Ward could not have killed Ms. Pal by himself, as well as their sole theory for any substantial involvement by Mr.

Foster.  Moreover, trial counsel states in an affidavit that the failure to pursue a blood spatter expert was not the result of strategy.  Lastly, three additional witnesses have come forward recounting additional declarations Sheldon Ward made before his death, pronouncing, without equivocation, Mr. Foster's innocence.

While Texas' system is designed to expose precisely these sorts of inadequacies by trial counsel in the state habeas appeals, in Mr. Foster's case the system collapsed.  Counsel appointed to represent Mr. Foster in state habeas was likewise ineffective, failing to perform the investigation necessary to point up the profound flaws in the state's case, or raise the trial ineffectiveness claims pivotal to same – despite Mr. Foster's repeated entreaties to counsel and the Courts.  To add insult to injury, appointed habeas counsel's initial incompetence thwarted all of Mr. Foster's subsequent efforts to investigate and present these claims in these federal courts.

In the wake of the dismal performance of appointed state habeas counsel, Mr. Foster requested and received new counsel – including the undersigned (F. Clinton Broden) - for federal court.  Federal counsel identified and attempted to investigate and raise the claims that trial counsel were ineffective in failing to fully present to the jury the pivotal confession by Ward, and in failing to secure a blood spatter expert to expose the falsity of a pivotal assertion in the prosecution's extraordinarily weak case.  At every opportunity, the State opposed Mr. Foster's request for funds and assistance to explore precisely these issues (at least in part on the assertion that the claims Mr. Foster sought to explore were unexhausted because appointed state habeas counsel had failed to raised them), and argued that the claims were defaulted because state habeas counsel had failed to present those claims – or a complete version of those claims – to the state courts.  In short, the State utilized the failings of the system (appointment of inadequate state habeas counsel) to argue that Mr. Foster's claims of innocence should not be investigated, provided expert assistance, nor reviewed by the federal courts.

9

It was not until after Mr. Foster had been denied relief by the federal courts that he was able to secure the assistance of a blood spatter expert and present the more-fully-developed innocence claims to the state courts in a successive petition. That application was dismissed because it could have (by competent appointed counsel), but had not been (because counsel appointed was ineffective) raised in his original state habeas application. The claims and facts in support, while pointing strongly to Mr. Foster's innocence, failed to meet the Texas Court of Criminal Appeals' (CCA's) heightened burden imposed at the successive state habeas stage. *See Ex Parte Foster*, No. WR-65,799-02 (Tex. Crim. App. Dec. 30, 2010); *Ex parte Foster*, No. WR-65,799-03 (Tex. Crim. App. Sept. 12, 2011).

Ironically, and pointedly, it is the issues raised - the inadequacies of trial and state habeas counsel – that have obfuscated and confused the substantial merits of both the assertion of innocence, and the claim of trial ineffectiveness. It was only because of trial counsel's deficiencies that the state was able to utilize such shaky evidence to convict Mr. Foster as an accomplice.

Mr. Foster has repeatedly been caught in fatal gaps entirely outside his control. While he complained vociferously about state habeas counsel's lack of communication and performance, he has – and is to this day – bearing the consequences of the inadequacies of both appointed trial and habeas counsel. *See, e.g., Ex parte Foster*, No. 65,799-02 (Tex. Crim. App. Dec. 30, 2010), slip op. at 2 (Cochran, J., concurring), thereby underscoring the importance of the claim of ineffectiveness of state habeas counsel.

After complaining adamantly about state habeas counsel's performance to this Court to ensure he received new counsel, he nonetheless came in with a barren state court record that precluded him from presenting to this Court a full factual record, the basis for arguing the need for expert and investigative assistance, or a full and straightforward presentation of the most meritorious issues. Assessments of his claims by this Court - devoid of the facts that could not be

developed or presented because the claims to which they pertained were unexhausted, and

discovery and investigation were thus unavailable, similarly points to the prejudice resulting from

state habeas counsel's ineffectiveness.  In short, it is the consequences of the issues Mr. Foster

identifies that the courts have previously relied upon to reject Mr. Foster's claims and assertions of

innocence.

This extraordinary constellation of timing and events in this case – and Mr. Foster's

diligence in attempting to ensure that his rights were protected, and in consistently and repeatedly

raising the very issue on which there has been a sea change in the law warrant this Court's

intervention.

<u>ARGUMENT</u>

I.      **MR. FOSTER'S FUTILE EFFORTS TO OBTAIN MINIMALLY EFFECTIVE
        ASSISTANCE OF TRIAL AND HABEAS COUNSEL**

Mr. Foster repeatedly tried to reach out to state habeas counsel and the courts to express

his concerns about the quality of the representation being provided.  Those letters reveal that not

only did counsel fail to visit him (of course, the client is the first stop on the road to planning the

demanding investigation required in state habeas cases), but failed to communicate with him

altogether, or incorporate the concerns Foster expressed about his case, being wrongfully

convicted, and the issues he wanted raised.  Thus, in a letter to the trial judge, Sharen Wilson, he

wrote:



_JUDGE Wilson, Please allow me to add the following. I have been Housed here at TCCC for 248 days Today, and I come to you for help. MY Attorney that has been apointed to me has yet to come and acquaint himself with MY case.
I have sent him letters to his office asking him to come see me, MY Family has written him, e-mailed him, called him, and as of yet, Nothing!_

*See* Appendix 1.A.  When these entreaties were unavailing, Mr. Foster then wrote to the CCA, stating that his appointed (habeas and direct appeal) attorneys would not communicate with him, and asking, thus, that they not be allowed to file anything on his "behalf" without his approval.

> I AM WRITING TO NOTIFY YOU THAT I HAVE INSTRUCTED BOTH OF MY COURT APPOINTED ATTORNEYS, DAVID L. RICHARDS. AND ROBERT FORD NOT TO FILE ANY DOCUMENTS WITH THE COURT ~~WITH~~ WITHOUT MY PRIOR APPROVAL AND SIGNATURE TO ENSURE THAT MY ATTORNEYS ARE REPRESENTING MY BEST INTERESTS AND LAWFUL OBJECTIVES SINCE THEY BOTH REFUSE OR NEGLECT TO ANSWER ANY OF THE NUMEROUS letters. I HAVE SENT, ASKING THEM FOR INFORMATION REGARDING THE ISSUES I WISH TO BE RAISED AND PRESERVED IN THE FILING OF MY APPEALS.

*See* Appendix 1.B (letter of August 13, 2006).  When that letter produced no results, Mr. Foster wrote again to the trial judge, detailing issues that he wanted raised:

> I come to you again and ask that the following evidence be reviewed and considered before you make any ruling, I would appreciate these facts be added to the facts of my case prior to your ruling.
> Your Honor I'm no attorney and I've no idea how to get my court appointed to address these issues witch I feel are facts and to have them put in my WRIT so, I'm asking for your wisdom and guidance on how to get the following issues addressed.

See Appendix 1.C (letter of November 16, 2006).

None of these desperate pleas had any effect.  It was thus no surprise that Foster was adamant that he did not want state habeas counsel to represent him in federal court.  He expressed these sentiments in a letter to the clerk of this Court, detailing the fact that state counsel had refused to investigate the case, failed to keep him informed, and failed to let him review the petition before it was filed.

12

> Dear Karen Mitchell,
>
> I do Not Yet Know which Federal Judge has been assigned to my Federal Appeal "Capital Case" So I pray that addressing this accordingly will be allowed.
> I would ask that State Habeas Attorney Robert Ford in no way be Connected to my Federal Appeals, he neglected to properly keep me informed, I asked him repeatedly to investigate issues and he did Not, he refused to answer my questions and after having asked him numerous times to allow me the chance to view my WRIT before submitting it, it was Filed without my knowledge. At this time I pray that my request be granted.      Thank you

*See* Appendix 1.D (Letter of March 26, 2007).  To his appointed state habeas attorney Mr. Foster

wrote:

> Dear Mr. Ford,
>
> due to your lack of attention to detail and Poor Communication with me and your Willingness or the lack there of to properly investigate my allegations, I'm letting you know as of this date mentioned above, I do Not Want you to have anything to do with my Federal Appeals.

Appendix 1.E. (letter of Mar. 26, 2007).  He concluded:

> This is my Life Mr Ford and I Feel you treated me Like a dog So please, I ask that you not try and be assigned to my Appeals at a Federal Level.

*Id.*  Mr. Foster, an indigent death row prisoner, did everything within his power to request,

convince and compel his appointed state counsel to perform diligently and competently.  That

counsel failed to do so should not be laid at Mr. Foster's feet.

II.   THE PARTICULAR CIRCUMSTANCES AND EQUITIES OF *THIS* CASE
      WARRANT RELIEF PURSUANT TO FED. R. CIV. PROC. 60(B)(6).

A.   Rule 60(b) confers jurisdiction on this Court to reopen Mr. Foster's federal
      habeas corpus proceedings.

District courts have jurisdiction to consider Rule 60(b) motions in habeas proceedings so

long as the motion neither raises a new claim for habeas relief nor "attacks, not the substance of

the federal court's resolution of a claim on the merits, but [instead challenges] some defect in the

integrity of the federal habeas proceedings." *Gonzalez v. Crosby,* 545 U.S. 524, 532 (2005).

Justice Scalia, writing for the *Gonzalez* Court, explained that there is no new habeas claim "when

[a petition] merely asserts that a previous ruling which precluded a merits determination was an

error – for example, a denial for such reasons as failure to exhaust, *procedural default,* or statute-

of- limitations bar." *Id.* at 532 n. 4 (emphasis added). Thus, the Court determined that Mr.

Gonzalez' motion pursuant to Rule 60(b)(6), "which allege[d] that the federal courts misapplied the

federal statute of limitations set out in § 2244(d), fits this description." *Gonzalez,* 545 U.S. at 533

(footnote omitted). Applying Gonzalez, the Fifth Circuit has specifically held that, in the present

circumstances, motions such as the one presented here are not improper successive petitions, and

are properly before this Court. *Adams v. Thaler,* ___ F.3d ___, 2012 WL 145094 (C.A.5 Tex.) at

*5.[7]

B. Rule 60(b)(6) relief is appropriate to achieve substantial justice.

Federal Rule of Civil Procedure 60(b) provides in pertinent part:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just

---

[7] Although this Court did not address the ineffectiveness of habeas counsel as cause for default argument,
Mr. Foster submits that this is because it was, at the time, squarely foreclosed by Supreme Court and Fifth
Circuit precedent. Although this Court continued on to consider the merits of Mr. Foster's "Schlup" claim,
and a highly constricted version of Mr. Foster's claim of ineffective assistance of counsel, he submits that
this review, and the facts and record on which it was based, was constricted in fundamental ways by the
very error he asserted as cause: the ineffectiveness of state habeas counsel. As such, he submits that this
matter is appropriate for reopening.

terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . .

(6) any other reason that justifies relief.

In *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir. 1981), the Fifth Circuit described the role and purpose of Rule 60(b) in our civil justice system and enumerated guidelines for its application:

> The purpose of Rule 60(b) is to delineate the circumstances under which relief may be obtained from the operation of final judgments, whether they are entered by default . . . or otherwise. By its very nature, the rule seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the "incessant command of the court's conscience that justice be done in light of all the facts."

> In this light, it is often said that the rule should be liberally construed in order to do substantial justice. What is meant by this general statement is that, although the desideratum of finality is an important goal,[8] the justice-function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause. ...[T]here can be little doubt that Rule 60(b) vests in the district courts power "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."

> In sum, then, Rule 60(b) is "a grand reservoir of equitable power to do justice in a particular case," that may be tapped by the district court in the sound exercise of its discretion, and within the strictures inherent in the underlying objectives of the rule.

*Id.* at 401-02 (citations omitted).

> The Fifth Circuit "applies Rule 60(b) 'most liberally to judgments in default . . . [because]

> . . . [t]runcated proceedings of this sort are not favored . . . . Thus, unless it appears that no injustice was done by the judgment, the equities in such cases will militate strongly in favor of relief.'" In a default case, "[t]he absence of injustice is clear when the movant is unable to show the existence of a defense of sufficient merit to indicate the possibility that the outcome would differ upon retrial."

*Seven Elves*, 635 F.2d at 403 (citations omitted).

The judgment from which Mr. Foster seeks relief is not a default judgment, but the same

---

[8] Justice Scalia subsequently clarified that the state's interest in finality should be accorded little weight when assessing the equities of a Rule 60(b) motion: "The mere recitation of [the 60(b)] provisions shows why we give little weight to respondent's appeal to the virtues of finality. That policy consideration, standing alone, is unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality." *Gonzalez*, 545 U.S. at 529.

principles apply here. Just as default judgments that preclude merits review are not favored, applications of procedural bars to potentially meritorious constitutional claims for habeas relief that have the same effect are likewise not favored where avoidable. *See, e.g., Michigan v. Long*, 463 U.S. 1032, 1041 (1983) (requiring "clear and express" reliance on state law ground to preclude federal merits review); *Prieto v. Quarterman*, 456 F.3d 511, (5th Cir. 2006) (a court should not lightly *sua sponte* apply a procedural default in a habeas corpus proceeding).

Indeed, *Seven* Elves concerned not a default judgment, but a judgment that "[bore] many of the characteristics of a default judgment," primarily the fact that it "seem[ed] clear that the full merits of the cause were not examined." *Id.* at 403. Because full development and consideration of Mr. Foster's potentially meritorious constitutional claim was truncated by the application of a procedural default bar, his case likewise bears characteristics of a default judgment.

**C.    The Decision of the Fifth Circuit Court of Appeals in *Adams v. Thaler* does not Preclude the Granting of this Motion.**

In *Adams v. Thaler*, ___ F.3d ___ 2012 WL 1415094 (C.A.5 Tex.), the Fifth Circuit held, in pertinent part:  "Our precedents hold that "[a] change in decisional law after entry of judgment does not constitute exceptional circumstances and *is not alone* grounds for relief from a final judgment" under Rule 60(b)(6)." *Id.* at *6 (citations omitted) (emphasis added). Cf. *Ritter v. Smith*, 811 F.2d 1398, 1401 (11th Cir. 1987) (something more than a "mere" change in law must be present to establish extraordinary circumstances").  In the particular circumstances of the *Adams* case - where the petitioner did not diligently pursue his appeals, asserted deficiencies of habeas counsel as cause for default in the first time in his Motion for Relief from Judgment, and where the underlying claim was a record based ineffectiveness claim concerning an error in jury instructions – the Fifth Circuit did not find exceptional circumstances.  Mr. Foster's case is easily distinguishable.

As the Fifth Circuit's qualification makes clear, changes in decisional law *alone* cannot be

16

grounds for relief from judgment.  In *Lopez v. Ryan*, ___ F.3d.__, 2012 WL 1676696 (C.A.9 (Ariz.)),

the Ninth Circuit, likewise rejecting a blanket rule that the *Martinez* decision automatically qualified

or precluded a finding of "extraordinary circumstances" under Rule 60(b), applied a more holistic

analysis.  Mr. Foster submits that a similar analysis is warranted in his case, and that the import

and affect of *Martinez* considered in the context of these particular circumstances (readily

distinguishable from the procedural history, facts, and claims presented by Mr. Adams)  presents

grounds for this Court to grant relief under 60(b)(6).

     The *Lopez* Court turned to the following factors, initially detailed in *Phelps v. Alameida*,

569 F.3d 1120, 1133 (9th Cir.2009), as relevant when a petitioner seeks post-judgment relief

based on an intervening change in the law.  Stressing that the courts must balance numerous

factors on a case-by-case basis, the Court outlined the following:  (1) whether "the intervening

change in the law ... overruled an otherwise settled legal precedent;" (2) whether the petitioner was

diligent in pursuing the issue; (3) whether "the final judgment being challenged has caused one or

more of the parties to change his position in reliance on that judgment;" (4) whether there is "delay

between the finality of the judgment and the motion for Rule 60(b)(6) relief;" (5) whether there is a

"close connection" between the original and intervening decisions at issue in the Rule 60(b) motion;

and (6) whether relief from judgment would upset the "delicate principles of comity governing the

interaction between coordinate sovereign judicial systems. *Id*. at 1135–40.   The factors

enumerated in *Phelps* are easily met by Mr. Foster, likewise overlap with the considerations

articulated in *Seven Elves*, and are discussed below.

     Moreover, Mr. Foster submits that a closer examination of the relevant case law compels

the conclusion that in the circumstances of his particular case, the conditions necessary to permit

relief from judgment are present.  In *Gonzalez v. Crosby*, 545 US 524 (2005) – relied upon and

discussed by the *Adams* Court - the Supreme Court upheld a district court's denial of Rule 60(b)(6)

relief premised on a post-judgment Supreme Court decision - *Artuz v. Bennett*, 531 U.S. 4 (2000) - that contradicted the district court's application of the statute of limitations to deny Gonzalez's habeas corpus petition. The Supreme Court upheld the district court's denial on the ground that extraordinary circumstances were not present. Observing that "not *every* interpretation of the federal statutes setting forth the requirements for habeas provides cause for reopening cases long since final," 545 U.S. at 536, the Court held that the *particular* legal decision that Gonzales relied upon to justify granting relief from his judgment did not amount to extraordinary circumstances for two reasons. First, in *Artuz* the Supreme Court merely addressed an unsettled legal question of statutory interpretation that differed from the appellate court's then-prevailing interpretation. *Id.*; *see also United States ex rel. Garibaldi v. Orleans Parish School Bd.*, 397 F. 3d 334, 338 (5th Cir. 2005) (Supreme Court's resolution of open and unsettled circuit split not in itself an extraordinary circumstance). Second, Gonzalez's own conduct evidenced that the announcement of *Artuz* was not extraordinary, because Gonzalez failed to pursue review of the limitations issue on appeal and before the Supreme Court, despite the Eleventh Circuit's precedent on the issue having been "at odds with the rule in several other Circuits." *Gonzalez*, 545 U.S. at 537. In short, the Supreme Court's mere resolution of an open circuit split on an unsettled legal question of statutory interpretation for which Gonzalez had time to, but did not, take advantage while his federal habeas corpus case was still on direct review was not an extraordinary circumstance warranting relief from his judgment. "Unlike the "hardly extraordinary" development of the Supreme Court resolving an existing circuit split, *Gonzalez*, 545 U.S. at 536, the Supreme Court's development in *Martinez* constitutes a remarkable—if "limited," *Id.*, 132 S.Ct. at 1319—development in the Court's equitable jurisprudence." *Lopez*, 2012 WL 1676696 at *4.

The change in law wrought by *Martinez*, in conjunction with other factors present in Mr. Foster's case, does amount to extraordinary circumstances. Discussion of the factors applied in

18

Lopez compels this conclusion.

### 1. The intervening change in the law overruled an otherwise settled legal precedent.

*Martinez* represents a reversal of what was understood by all parties and this court to be settled law—both in the Fifth Circuit *and* the Supreme Court. The Supreme Court expressly understood *Martinez* to have carved out an exception to jurisprudence that the Supreme Court *itself* had created over twenty years earlier in *Coleman, supra. Martinez*, 132 S.Ct. at 1316.[9] As a result of this "radical alteration of [the Supreme Court's] habeas jurisprudence," *Martinez*, 132 S.Ct. at 1327 (Scalia, J., dissenting), constitutional claims which previously could not be reviewed on the merits because of deficient representation by state post-conviction counsel in state habeas corpus proceedings pre-*Martinez* now may receive merits review if state habeas counsel's representation can be shown to have been ineffective. *See also Lopez*, 2012 WL 1676696 at *4.

### 2. Mr. Foster was diligent in pursuing the issue.

This factor unquestionably weighs in Mr. Foster's favor. He has pursued this issue Throughout the course of his state and federal habeas proceedings, Mr. Foster has been nothing less than diligent in seeking to protect and assert his rights, as well as attempting to remain informed about the progress of his case. He consistently complained to the Courts about the abysmal quality of his appointed counsel, and simultaneously attempted to communicate his concerns to counsel. He attempted to obtain funds for the investigation and expert assistance that would have permitted him to adequately litigate his claims of innocence and ineffective assistance of counsel, but was hamstrung from the outset by habeas counsel's deficient performance. Despite

---

[9] If Mr. Foster's habeas corpus case were still on appeal, *Martinez* would require vacatur of this Court's opinion and a remand to this Court to give the parties a fair opportunity to litigate, and this Court an opportunity to adjudicate Mr. Foster's petition in full view of the changes to federal habeas corpus wrought by the *Martinez* decision. *See Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999). It would wreak a profound injustice for Mr. Foster to be denied the opportunity to fully litigate his claim of innocence and related trial ineffectiveness simply because of a fluke of timing,

precedent squarely foreclosing the issue, he repeatedly raised that same deficient performance as cause for default – in this Court, the Fifth Circuit, and the Supreme Court. Mr. Foster has been more than diligent in pursuing this issue.

### 3. Finality.

The interest in deciding this case on the merits outweighs any interests in finality – an interest to which the *Gonzalez* Court expressly cautioned against assigning significant weight even when confronted with a statute of limitations violation. Federal review of Mr. Foster's claim – a claim which goes to the heart of his repeated assertions of innocence - is all that stands between him and execution.

### 4. The delay between the finality of the judgment and the motion for Rule 60(b)(6) relief is reasonable given how recently Martinez was decided;

Mr. Foster's petition for a writ of certiorari on this issue was denied just over two months ago. Mr. Foster – attempting to weigh and incorporate the fast changing law applying Martinez – now files this motion. He has been, by all accounts, diligent and timely.

### 5. There is a "close connection" between the original and intervening decisions at issue.

The fundamental change that *Martinez* represents is not a mere change in substantive law governing disposition of a claim previously reviewed on the merits, but a change that implicates whether constitutional claims will receive review by a federal court *at all*. The fear that federal constitutional claims will not ever receive merits review is at the heart of the *Martinez* decision itself. *Martinez*, 132 S.Ct. at 1316. ("[I]f counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claims."); *see also Lonchar v. Thomas*, 517 U.S. 314, 324 (1996). Dismissal also implicates Rule 60(b)'s core concern "that the judgment ... reflect the true merits of the cause." *Seven Elves*, 635 F. 2d at 401.

> Truncated proceedings ... are not favored, and Rule 60(b) will be liberally
> construed in favor of trial on the full merits of the case. Thus, unless it appears
> that no injustice was done by the judgment, the equities in such cases will militate
> strongly in favor of relief.

*Id.* at 403. That *Martinez* was explicitly driven by equity concerns significantly buttresses the

argument that the circumstances of *this* case comprise extraordinary circumstances. *Martinez*, 132

S.Ct. at 1318.[10]

### 6. Relief from judgment would not upset the "delicate principles of comity governing the interaction between coordinate sovereign judicial systems.

Mr. Foster submits that it is precisely the necessary recognition of the interplay between

the state and federal systems in his case that supports his request for relief. If state habeas

counsel had not been deficient, he would have been able to adequately litigate and present his

claims of innocence and ineffectiveness of trial counsel or failing to investigate and litigate same.

This interplay is indeed essential to the relevant principles of comity underlying the habeas corpus

framework and jurisprudence. Moreover, the gravity of the issues raised argue in favor of the relief

Mr. Foster seeks.

These considerations, when applied to Mr. Foster's case, constitute extraordinary

circumstances that justify affording relief from judgment. This conclusion can be reached despite –

indeed, in synchronicity with, the Fifth Circuit's decision in *Adams*. Absent such relief, Mr. Foster

will be executed without having been afforded review of the merits of his substantial Sixth and

Fourteenth Amendment ineffective assistance of counsel claims, a result sought to be avoided by

both *Martinez* and Rule 60(b) itself.

---

[10] Of course, the fact that this is a capital case also weighs in Mr. Foster's favor. It has long been recognized that death is different because it is a punishment different from all other sanctions in kind rather than degree. *Woodson v. North Carolina*, 428 US 280, 303-04 (1976) (plurality opinion); *id.* at 304. *See also Fahy v. Horn*, 240 F.3d 239, 244-45 (3d Cir. 2001) (factoring capital nature of case into consideration of whether extraordinary circumstances justified equitable tolling).

### D. Mr. Foster is entitled to Rule 60(b)(6) relief.

The *Seven Elves* Court "delineated factors that should inform the district court's consideration of a motion under Rule 60(b)": (1) that final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.[11] *Seven Elves,* 635 F.2d at 402. Other relevant factors include whether other intervening rights would be prejudiced; whether great delay is likely to occur; what is at stake in the proceeding; and whether any possible malpractice remedy against the attorney would be inadequate to restore the movant to their prejudgment position. *Id.* at 403. Although the *Seven Elves* factors are equities to be considered - not an exhaustive list of elements that must be satisfied - *all* weigh in favor of granting Mr. Foster's motion.

### 1.  Final judgments should not lightly be disturbed.

As noted above, subsequent to the *Seven Elves* decision, the Supreme Court held that the concerns about finality explicit in the first *Seven Elves* factor are "unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality." *Gonzalez,* 545 U.S. at 529.

---

[11] Many of these factors overlap with those outlined in Lopez, and will not be discussed again in this section.

Moreover, the gravity of Mr. Foster's claims, and the diligence of his pursuit of same, weigh against any determination that disturbance of the final judgment of this Court is taken lightly.

### 2.  A Rule 60(b) motion is not to be used as a substitute for appeal.

Mr. Foster is not filing this motion as a substitute for appeal.  He has availed himself of all possibly avenues of appeal under the law existing at the time.  Yet that same law severely handicapped his ability to fully investigate and litigate his claim of ineffective assistance of trial counsel – precisely because appointed state habeas counsel was so inadequate.  He seeks here only one full and fair opportunity to litigate his claim of ineffective assistance of trial counsel.  This motion is the *only* avenue by which he can get this claim (after adequate investigation and presentation of all the relevant facts) heard in these federal courts.

### 3. The motion was made within a reasonable time.

As outlined supra, Mr. Foster has been timely and diligent.  He is filing this motion just two months after denial of his petition for a writ of certiorari.

### 4. Whether, the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense.

This Court both declined to address Mr. Foster's argument that habeas counsel's deficient performance constituted cause, and proceeded to address his claim of ineffective assistance of trial counsel (for failing to investigate and litigate his claim of innocence).  Crucially, the consideration of his claim could not be adequate or complete, as the record was inadequate (as Mr. Foster could not obtain funds to investigate or get expert assistance on an unexhausted claim).  It was not until much later that Mr. Foster was able to obtain the pro bono services of a blood spatter expert, who unequivocally opined that Ms. Pal was indeed murdered where she was found – thus undermining the prosecution's central argument for why Mr. Foster should be capitally convicted.  Once this evidence was obtained, trial counsel averred that the failure to obtain or

23

present such evidence was *not* a question of trial strategy.  *See* Appendix 4.  Without a complete opportunity for fact development or briefing reflecting all the relevant facts and incorporating a complete record, Mr. Foster could not present to this court the compelling argument why the codefendant's exculpatory note that trial counsel failed to introduce was so pivotal, and why it provided facts and explanations not present in Wards other statements exonerating Mr. Foster.

Mr. Foster thus submits that while this Court technically considered the merits of the claim, the very error Petitioner complains of rendered the record – and thus this Court's review - incomplete.  As such, it also did not administer justice.

Although a grant of relief on Mr. Foster's claim of ineffective trial counsel for failing to investigate and litigate his claim of innocence is beyond the relief sought, the potential merits of that claim is nonetheless a potentially relevant factor under *Seven Elves. Id.* at 403.  As Mr. Foster outlines above, and is ready to brief in full should this Court grant this motion, his claim is at a minimum potentially meritorious.  The gravity of the issue raised, and the stakes at issue, only underscore the need for full litigation and briefing.

### 5. Whether, if the judgment was rendered after a trial on the merits, the movant had a fair opportunity to present his claim or defense.

As discussed above, Mr. Foster has never had a full or fair opportunity to present the claim (or defense) at issue.  As in *Seven Elves, Inc.,* "the judgment [in the case at bar] should be set aside in the interest of justice under Fed. R. Civ. Proc. 60(b) because [Mr. Foster was] denied an adequate opportunity to present [his] case by the gross neglect of [his previous] attorney."  This Court should afford him that opportunity. *Seven Elves, Inc.,* 635 F.2d at 400-01.

### 6. Rule 60(b) should be liberally construed in order to achieve substantial justice, and there are no intervening equities that would make it inequitable to grant relief.

*Seven Elves* counsels this Court to liberally construe Rule 60(b)(6) "in order to achieve substantial

24

justice." In the case at bar, *all* of the relevant equities weigh heavily in Mr. Foster's favor, and no intervening equities would render it inequitable to grant the requested relief.

## CONCLUSION

For the foregoing reasons, the Court should grant Mr. Foster relief from the judgment, and enter a scheduling order to permit the parties an opportunity to brief the applicability of *Martinez* to the facts of his case, and to brief, on a full record, the merits of his claim of ineffective assistance of trial counsel.

Dated: June 1, 2012

Respectfully submitted,

   /s/ F. Clinton Broden

F. Clinton Broden
Texas Bar No. 24001495
Broden & Mickelsen
2600 State Street
Dallas, TX 75204
214-720-9552
214-720-9594 (facsimile)

Maurie Levin
Texas Bar No. 00789452
Capital Punishment Clinic
U.T. School of Law
727 East Dean Keeton
Austin, TX 78705
512-232-7795
512-232-9171 (facsimile)

*Counsel for Cleve Foster*

## CERTIFICATE OF CONFERENCE

I hereby certify that on this 1st day of June I conferred with counsel for Respondent, Stephen Hoffman, who indicated that he is opposed to this Motion.

/s/ F. Clinton Broden
F. Clinton Broden

## CERTIFICATE OF SERVICE

I hereby certify that this 1st day of June, 2012, the foregoing brief was filed using the electronic case filing system of this Court.  Thus, counsel of record for Respondent Stephen Hoffman, Assistant Attorney General, Stephen.Hoffman@oag.state.tx.us who has consented to accept this Notice as service by electronic means, was served via the electronic filing system.

/s/ F. Clinton Broden
F. Clinton Broden